1   MARIO N. ALIOTO, ESQ. (56433)
2   LAUREN C. RUSSELL, ESQ. (241151)
    TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
3   2280 Union Street
    San Francisco, CA 94123
4   Telephone: (415) 563-7200
    Facsimile: (415) 346-0679
5   E-mail: malioto@tatp.com
    laurenrussell@tatp.com
6
7   JOSEPH M. PATANE, ESQ. (72202)
    LAW OFFICE OF JOSEPH M. PATANE
8   2280 Union Street
    San Francisco, CA 94123
9   Telephone: (415) 563-7200
    Facsimile: (415) 346-0679
10  E-mail: jpatane@tatp.com
11
    Attorneys for Plaintiff Candido
12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14

15  JOHN CANDIDO, on behalf of himself and  )  Case No.
    all others similarly situated,          )
16                                          )
              Plaintiff,                     )  CLASS ACTION COMPLAINT
17                                          )
    vs.                                     )
18                                          )
    THE HERSHEY COMPANY; HERSHEY            )
19  CANADA, INC.; MARS INC.;                )  JURY TRIAL DEMANDED
    MASTERFOODS U.S.A., INC.; MARS          )
20  CANADA, INC.; NESTLE S.A.; NESTLE       )
    U.S.A., INC.; NESTLE CANADA, INC.;      )
21  ITWAL, LTD.; and CADBURY                )
    SCHWEPPES PLC,                          )
22                                          )
              Defendants.                    )
23  _____

24                    CLASS ACTION COMPLAINT

25          Plaintiff John Candido ("Candido") on behalf of himself and all others similarly situated

26  in the United States, brings this action for damages and injunctive relief under state and federal

27  antitrust, unfair competition, and consumer protection laws against the Defendants named

28  herein, demanding trial by jury, and complaining and alleging as follows:

**NATURE OF THE CASE**

1.      This lawsuit lawsuit is brought as a class action on behalf of individuals and entities that purchased chocolate (as further defined below) in the United States directly from Defendants, their predecessors, or their controlled subsidiaries and affiliates during the period beginning no later than February 2002 and continuing through the present (the "Class Period"). Plaintiff alleges that during the Class Period the Defendants conspired to fix, raise, maintain or stabilize the prices of chocolate sold in the United States. As a result of Defendants' unlawful conduct, Plaintiff and the Class Members paid artificially inflated prices for chocolate and have suffered antitrust injury to their business or property.

2.      At all relevant times herein, Defendants were chocolate manufacturers that manufactured, marketed, sold, and/or distributed chocolate to customers in the United States and throughout the world.

**JURISDICTION AND VENUE**

3.      This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. §26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, to recover damages under state antitrust and consumer protection laws, and to recover costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants' violations of those laws.

4.      The Court has subject matter jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337. The Court has subject matter jurisdiction over the California claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

5.      This court also has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a state different from any Defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs." This Court also has jurisdiction under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of

**2**

1    a state within the United States and one or more of the Defendants is a citizen or subject of a

2    foreign state."

3        6.    Venue is laid in this District pursuant to 28 U.S.C. § 1391. Venue is proper in

4    this judicial district because during the Class Period one or more of the Defendants resided,

5    transacted business, was found, or had agents in, this district, and because a substantial part of

6    the events giving rise to Plaintiff's claims occurred in this district, and a substantial portion of

7    the affected portion of the interstate trade and commerce described below has been carried out in

8    this district.

9                                   **DEFINITIONS**

10       7.    Chocolate is a confectionary product created by processing cocoa beans and

11   mixing the processed beans with milk, sugar, and other ingredients. As used in this Complaint,

12   the term "Chocolate" shall include, at least, chocolate bars, industrial chocolate (melted and

13   powdered chocolate made after processing cocoa beans sold to create a final product), and block

14   chocolate (solid chocolate blocks made for immediate consumption and for melting down to

15   make desserts and molded chocolate products).

16       8.    The "Class Period" or "relevant period" means the period from no later than

17   February 2002 and continuing through the present.

18       9.    "Person" means any individual, partnership, corporation, association, or other

19   business or legal entity.

20                                   **PLAINTIFF**

21       10.   Plaintiff John Candido ("Candido") is a California resident. During the relevant

22   period, Candido indirectly purchased Chocolate from one or more of the Defendants or their co-

23   conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

24                                   **DEFENDANTS**

25       11.   Defendant The Hershey Company ("Hershey Co.") is a Delaware corporation

26   headquartered in Hershey, PA. Hershey's is the top-selling manufacturer of Chocolate in the

27   United States and accounts for 45 percent of the U.S. Chocolate market. During the Class

28

1    Period, Hershey's manufactured, marketed, sold and/or distributed Chocolate to customers

2    throughout the United States, including the State of California.

3        12.    Defendant Hershey Canada, Inc. ("Hershey Canada") is a wholly-owned

4    subsidiary of defendant Hershey Co. with its principal place of business located at 2350

5    Matheson Blvd. E., Mississauga, ON, L4W 5E9, Canada. During the Class Period, Hershey

6    Canada manufactured, marketed, sold and/or distributed Chocolate to customers throughout the

7    United States, including the State of California.

8        13.    Defendants Hershey Co. and Hershey Canada are collectively referred to herein

9    as "Hershey's."

10        14.    Defendant Mars, Inc. is a privately held Delaware corporation with its principal

11    place of business located in McLean, Virginia. During the Class Period, Mars manufactured,

12    marketed, sold and/or distributed Chocolate to customers throughout the United States,

13    including the State of California.

14        15.    Defendant Masterfoods USA, Inc. ("Masterfoods") is a Delaware corporation

15    with its principal place of business located at 295 Brown Street, Elizabethtown, NJ. Masterfoods

16    conducts U.S. food, snack and pet care operations for defendant Mars. During the Class Period,

17    Masterfoods manufactured, marketed, sold and/or distributed Chocolate to customers throughout

18    the United States, including the State of California.

19        16.    Defendant Mars Canada, Inc., formerly Effem, Inc. ("Mars Canada") is a division

20    of defendant Mars, Inc. with its principal place of business located at 27 Holland Drive, Bolton,

21    ON, L7E 5S4, Canada. During the Class Period, Mars Canada manufactured, marketed, sold

22    and/or distributed Chocolate to customers throughout the United States, including the State of

23    California.

24        17.    Defendants Mars Inc., Masterfoods, and Mars Canada are collectively referred to

25    herein as "Mars."

26        18.    Defendant Nestlé S.A. is a Swiss company with its principal place of business

27    located at Avenue Nestlé 5, CH-1800, Vevey, Vaud, Switzerland. Nestlé S.A. is the world's

28    largest food and beverage company. During the Class Period, Nestlé S.A. manufactured,

1  marketed. sold and/or distributed Chocolate to customers throughout the United States,

2  including the State of California.

3      19.    Defendant Nestlé U.S.A., Inc. ("Nestlé USA") is a Delaware corporation with its

4  principal place of business located at 800 N. Brand Blvd., Glendale, California 91203. Nestlé

5  USA is a wholly owned subsidiary of defendant Nestlé S.A. During the Class Period, Nestlé

6  USA manufactured. marketed, sold and/or distributed Chocolate to customers throughout the

7  United States, including the State of California.

8      20.    Defendants Nestlé Canada, Inc. ("Nestlé Canada") is a wholly-owned subsidiary

9  of defendant Nestlé S.A. with its principal place of business located at 25 Sheppard Avenue

10  West, North York. Ontario, M2N 6S8, Canada. During the Class Period, Nestlé Canada

11  manufactured. marketed, sold and/or distributed Chocolate to customers throughout the United

12  States, including the State of California.

13      21.    Defendants Nestlé S.A., Nestlé USA and Nestlé Canada are collectively referred

14  to herein as "Nestlé."

15      22.    Defendant Cadbury Schweppes plc ("Cadbury") is an English company with its

16  principal place of business located at Berkeley Square, London, England, U.K. Cadbury sells its

17  products in the U.S. through a licensing agreement with defendant Hershey's. During the Class

18  Period, Cadbury manufactured, marketed, sold and/or distributed Chocolate to customers

19  throughout the United States, including the State of California.

20      23.    Defendant ITWAL, Ltd. ("ITWAL") is a national network of independent,

21  diversified retail and food service wholesale distributors with its principal place of business

22  located at 440 Railside Drive, Brampton, Ontario, L7A 1L1, Canada. During the Class Period,

23  ITWAL was aware of, coordinated, and facilitated the unlawful conspiracy alleged herein.

24  **DEFENDANTS AND CO-CONSPIRATORS**

25      24.    Various other persons, firms and corporations, not named as Defendants herein,

26  and presently unknown to Plaintiff, have participated as co-conspirators with Defendants and

27  have performed acts and made statements in furtherance of the conspiracy and/or in furtherance

28  of the anticompetitive, unfair or deceptive conduct.

25.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

26.     Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein. Each Defendant which is a subsidiary of a foreign parent acts as the sole United States agent for Chocolate made by its parent company.

## INTERSTATE TRADE AND COMMERCE

27.     Throughout the Class Period, there was a continuous and uninterrupted flow of Chocolate sales in interstate and international commerce throughout the United States.

28.     Defendants' unlawful activities, as described herein, took place within the flow of interstate commerce to Chocolate purchasers located in states other than the states in which Defendants are located, as well as throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce, including the California Chocolate market.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action on behalf of himself and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons and or entities residing in the State of California (excluding Defendants, co-conspirators, their subsidiaries and affiliates, all governmental entities, and any judicial officer presiding over this action, including members of his/her immediate family and judicial staff, and any juror assigned to this action) who or which indirectly purchased Chocolate in the State of California for their own use and not for resale, at any time during the period beginning February 2002 and continuing through the present.

30.     This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.    The Class is ascertainable and there is a well-defined community of interest among members of the Class;

b.    Based upon the nature of trade and commerce involved and the number of indirect purchasers of Chocolate, Plaintiff believes that the number of Class members is very large, and therefore joinder of all Class members is not practicable;

c.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff indirectly purchased Chocolate manufactured by Defendants or their co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

d.    The following common questions of law or fact, among others, exist as to the members of the Class:

i.    Whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain, or stabilize the prices of Chocolate;

ii.    Whether the combination or conspiracy caused Chocolate prices to be higher than they would have been in the absence of Defendants' conduct;

iii.    The operative time period of Defendants' combination or conspiracy;

iv.    Whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class;

v.    The appropriate measure of the amount of damages suffered by the Class;

vi.    Whether Defendants' conduct violates Section 1 of the Sherman Act (15 U.S.C. § 1) as alleged in the First Claim for Relief;

vii.    Whether Defendants' conduct violates the California Cartwright Act (Cal. Bus. & Prof. Code § 16720 *et seq.*) as alleged in the Second Claim for Relief;

1                      viii.      Whether Defendants' conduct violates the California Unfair

2  Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) as alleged in the Third Claim for

3  Relief;

4                      ix.      The appropriate nature of class-wide equitable relief.

5              e.      These and other questions of law and fact common to the members of the

6  Class predominate over any questions affecting only individual members, including legal and

7  factual issues relating to liability and damages;

8              f.      After determination of the predominant common issues identified above,

9  if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

10             g.      Plaintiff will fairly and adequately protect the interests of the Class in that

11  Plaintiff has no interests that are antagonistic to other members of the Class and has retained

12  counsel competent and experienced in the prosecution of class actions and antitrust litigation to

13  represent him and the Class;

14             h.      A class action is superior to other available methods for the fair and

15  efficient adjudication of this litigation since individual joinder of all damaged Class members is

16  impractical. The damages suffered by the individual Class members are relatively small, given

17  the expense and burden of individual prosecution of the claims asserted in this litigation. Thus,

18  absent the availability of class action procedures it would not be feasible for Class members to

19  redress the wrongs done to them. Even if the Class members could afford individual litigation,

20  the court system could not. Further, individual litigation presents the potential for inconsistent or

21  contradictory judgments and would greatly magnify the delay and expense to all parties and the

22  court system. Therefore, the class action device presents far fewer case management difficulties

23  and will provide the benefits of unitary adjudication, economy of scale and comprehensive

24  supervision in a single court;

25             i.      Defendants have acted, and/or refused to act, on grounds generally

26  applicable to the Class, thereby making appropriate final injunctive relief with respect to the

27  Class as a whole; and

28

1    j.    In the absence of a class action, Defendants would be unjustly enriched

2  because they would be able to retain the benefits and fruits of its wrongful conduct.

3                                    **BACKGROUND**

4    31.    Throughout the period covered by this Complaint, Defendants and their co-

5  conspirators engaged in the business of manufacturing, marketing, selling and/or distributing

6  Chocolate throughout the United States, including the State of California.

7    32.    The worldwide market for Chocolate is highly concentrated, with Defendants

8  together controlling almost 50 percent of that market.

9    33.    Defendants' market power in the United States is even greater. Hershey's, Mars

10  and Nestlé control over 80 percent of the Chocolate market in the United States. Defendant

11  Hershey's share is estimated at 45 percent, Defendant Mars's market share is estimated at 27

12  percent, and Defendant Nestlé's market share is estimated at 9 percent.

13    34.    The high degree of concentration in the market for Chocolate in the United States

14  facilitates the coordination of Chocolate prices.

15    35.    Chocolate is a commodity product that is uniform. It does not vary materially

16  depending upon the manufacturer. The Chocolate produced by any one Defendant is fungible

17  with any other Defendant's Chocolate.

18    36.    According to Packaged Facts, an industry publication, the United States market

19  for Chocolate rose to $16 billion in 2006. Much of that increase was achieved through price

20  increases rather than increase unit sales.

21    37.    According to a 2004 market analysis, larger Chocolate producers were able to

22  construct barriers to entry to thwart competition from middle-tier chocolate producers. In 2002,

23  many Chocolate manufacturers had excess capacity. During the Class Period, Hershey's

24  announced the closure of a number of North American chocolate manufacturing facilities,

25  including in the United States, Ontario, Quebec, and Nova Scotia. On information and belief,

26  closure of those facilities had the effect of restricting the supply of Chocolate in the North

27  American market.

28  //

1

## DEFENDANTS' CONSPIRACY

2      38.     On December 20, 2007, a press release by Defendant Mars indicated that Mars

3   had been contacted by the United States Department of Justice ("DOJ") as part of an inquiry

4   into pricing practices in the chocolate industry. On the same day, Nestlé stated that it was also

5   aware of a DOJ inquiry into United States chocolate marketing practices. The DOJ investigation

6   follows a Canadian Competition Bureau inquiry into allegations of price fixing in the Chocolate

7   market.

8      39.     The Canadian Commissioner of Cooperation became aware of the allegations

9   when a participant in the alleged conspiracy (the "Cooperating Party") approached the Canadian

10  Competition Bureau under its Immunity Program.

11     40.     According to documents unsealed in December, 2007 by the Ontario Superior

12  Court of Justice (East Region), the collusion started in February, 2002, and was initially

13  coordinated by ITWAL. ITWAL worked with Defendants to force retailers to stop cutting prices

14  for Chocolate. Stores that did not comply had their Chocolate supply cut off.

15     41.     An article in the Wall Street Journal of December 22, 2007, quotes Daniel

16  Wilcock, a lawyer with the Canadian Competition Bureau: "The price fixing communications

17  were often at the most senior levels of the companies involved, and they have continued over a

18  number of years."

19     42.     In one letter from ITWAL to Nestlé, it is stated that, "At the end of the day, it is

20  only the suppliers' control and discipline of the trade spending that can restore the functionality

21  of the marketplace.... I urge you to meet and take action before this chocolate bar 'bubble

22  bursts.'"

23     43.     One of several TAKE ACTION NOW ("TAN") notices drafted by ITWAL and

24  distributed to members of the alleged cartel attaches pricing information available from

25  diverters, stresses the seriousness of the problems and concludes with, "I trust you will accept

26  the information in the spirit in which it is intended. I look forward to meeting with you to learn

27  what steps [your company] is taking to address this problem."

28

1    44.    Another TAN notice dated April 5, 2002 summarizes some of the actions that

2  had been undertaken by the co-conspirators. Among the summarized information is that:

3        a.    "potential gray marketers have been identified and, in some cases, cut

4            off;"

5        b.    "part of the solution is that vending customers should not be sold direct

6            and our recommended 'floor price model' will resolve it;"

7        c.    "an ongoing internal audit procedure has been set up to monitor account

8            activities...some of you have hired a third party investigator with results

9            already being achieved;"

10        d.    "thank you for your agreement to review;" and

11        e.    "thank you for putting in writing your serious concerns about this entire

12            situation and the fact that your representatives are subject to immediate

13            termination if trade spending policies are not adhered to accordingly."

14    45.    A TAN notice dated December 12, 2002 refers to the group's concerted and

15  committed efforts to "clean up" retail trade spending and that this is seen in the reduction of

16  "unreasonably low retail prices."

17    46.    Allegations in unsealed Canadian documents detail how, in furtherance of the

18  conspiracy, executives of Hershey, Mars, Nestlé and the unnamed Cooperating Party met at

19  coffee shops, restaurants and conventions for the purposes of price-fixing Chocolate in Canada

20  beginning at least as early as February 2002.

21    47.    On February 23, 2004, an executive from the Cooperating Party met with Bob

22  Leonidas, the Canadian Chief Executive for Nestlé, for a breakfast meeting. At the meeting, one

23  topic of discussion was the reduction of trade spend during which the Cooperating Party

24  executive indicated that it would reduce trade spend on Chocolate and that Leonidas "sees the

25  world the way" that he does.

26    48.    The Cooperating Party also provided the Bureau with an e-mail exchange

27  beginning on June 1, 2005 related to their discussion with ITWAL. One of these exchanges

28  entitled "Chocolate pricing" stated that ITWAL had informed the recipient that Nestlé and

**11**

Effem have been hinting to customers about a 2005 price increase and that the Cooperating

Party would "seriously consider" appropriate actions when firm details are known. In the same

e-mail, the author notes concern over the other leading player not following, but that his contact

said that they would inquire about it.

49.    During a meeting at the annual Confectionary Manufacturers Association of

Canada held on June 2-5, 2005, Bob Leonidas met with an executive of the Cooperating Party

and said words to the effect of "[W]e are going to take a price increase and I want you to hear it

from the top." Following this exchange, Leonidas handed the other executive an envelope

containing information on Nestlé's planned price increase on Chocolate in 2005.

50.    By at least July 2005, a letter containing confidential Nestlé price increase

information was circulating around the Cooperating Party's office. An e-mail referring to this

letter noted that it was a draft, as it was dated July 15, 2005 (the "July 15 letter"), was unsigned

and contained spelling mistakes. The information was that Nestlé was increasing the price of its

confectionary portfolio by approximately 5-7% effective October 31, 2005 for base

confectionary and April 18, 2006 for seasonal confectionary. This pricing information was

discussed among the Cooperating Party's leadership team and prompted the Cooperating Party

to announce an average price increase of 5.2% on its Chocolate effective October 31, 2005. The

Cooperating Party witness admitted that, "[t]he price increase…was such as to align its prices on

a number of common formats with those of Nestlé." The witness went on to note that Hershey

and Mars quickly followed suit.

51.    On July 6, 2005, an assistant to the Cooperating Party's executive was sent by

that executive to pick something up from Leonidas. Leonidas met the assistant downstairs at an

unspecified Nestlé office and said something to the effect that "it was better not to be seen in his

office." Leonidas then handed over an envelope, again containing information about a planned

price increase by Nestlé. Counsel for the Cooperating Party provided the Bureau with a copy of

the document that it believed to be the document Leonidas gave to the assistant. The document

is an unsigned letter on Nestlé letterhead announcing a chocolate price increase to the trade and

1    was forward-dated July 19, 2005 (the "July 19 letter"). This letter corrects the mistakes in the
2    earlier letter and raises the price increase to between 5 and 8%.

3        52.     According to documents unsealed by the Ontario Superior Court of Justice (East
4    Region), numerous other exchanges took place between Defendants throughout the Class Period
5    that were intended to cause the price of Chocolate to be fixed or stabilized at higher, artificially
6    derived, non-competitive levels.

7        53.     According to news reports, Defendant Cadbury is likely the Cooperating Party
8    given that it is not named as one of the companies under investigation.

9        54.     According to news reports, accusations similar to those made in Canada have
10    been made in the U.S.

11        55.     Defendant Cadbury announced in 2007 that it would increase the prices of
12    Chocolate more than the previous projected price increase of four to six percent and more than
13    the rate of inflation. Cadbury stated the price increase was intended to offset increases in the
14    costs of such raw materials as dairy, oil and cocoa. A Nestlé spokesman also stated in 2007 that
15    surging global commodity costs, including the cost of milk, was responsible for price increases
16    needed to maintain profit margins. In 2007, Hershey increased the price of its Chocolate four to
17    five percent.

18        56.     By engaging in collusive conduct in the market for Chocolate, Defendants were
19    able to manipulate and artificially fix, raise, maintain or stabilize the prices for the Chocolate
20    that they manufactured and sold in the United States.

21        57.     During the Class Period, Plaintiff and the class members indirectly purchased
22    Chocolate manufactured by the Defendants or their co-conspirators.

23        58.     Plaintiff and the class members paid more for their indirect Chocolate purchases
24    than they would have paid had Defendants not fixed Chocolate prices and cooperated in other
25    aspects of the Chocolate market.

26        59.     As a direct and proximate result of Defendants' conspiracy, Plaintiff and the class
27    members have been injured and financially damaged in their respective businesses and property
28    in presently undetermined amounts.

## VIOLATIONS ALLEGED

### First Claim for Relief

### (Violation of Section 1 of the Sherman Act)

60.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

61.   Beginning at a time unknown to Plaintiffs, but at least as early as February 2002 through the present, the exact dates being unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

62.   In particular, Defendants have combined and conspired to fix, raise, maintain or stabilize the prices of Chocolate sold in the United States.

63.   Defendants, by their unlawful conspiracy, artificially raised, inflated and maintained the market prices of Chocolate as herein alleged.

64.   The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of Chocolate they sold in the United States and elsewhere.

65.   In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including, but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

  a.   Agreed to fix, raise, maintain and stabilize the prices of Chocolate charged in the United States and throughout the world;

  b.   Announced Chocolate increases and decreases at or near the same times;

  c.   Implemented Chocolate price increases and decreases in the same or similar amounts and at or near the same times;

1     d.  Participated in meetings, phone conferences and other communications to

2        exchange information used by Defendants to formulate and implement the

3        price increases on Chocolate; and

4     e.  Signaled and communicated the formulation and implementation of the

5        price increases on Chocolate.

6  66.  During the Class Period, the Defendants increased the Chocolate prices they

7 charged. These increases in Chocolate pricing cannot be explained by actual increases in costs or

8 supply/demand forces alone, but rather were the result of anticompetitive conduct.

9  67.  The combination and conspiracy alleged herein has had the following effects,

10 among others:

11     a.  Price competition in the sale of Chocolate has been restrained, suppressed

12        and/or eliminated in the United States;

13     b.  Prices for Chocolate sold by Defendants and their co-conspirators have

14        been fixed, raised, maintained and stabilized at artificially high, non-

15        competitive levels throughout the United States; and

16     c.  Those who purchased Chocolate directly or indirectly from Defendants

17        have been deprived the benefits of free and open competition.

18  68.  As a direct result of the unlawful conduct of Defendants and their co-conspirators

19 in furtherance of their continuing contract, combination or conspiracy, Plaintiff and the members

20 of the class have been injured and will continue to be injured in their business and property by

21 paying more for Chocolate purchased indirectly from the Defendants and their co-conspirators

22 than they would have paid and will pay in the absence of the combination and conspiracy.

23  69.  These violations are continuing and will continue unless enjoined by this Court.

24  70.  Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiff and the Class

25 seek the issuance of an injunction against Defendants, preventing and restraining the violations

26 alleged herein.

27 //

28 //

1

2

3

**Second Claim For Relief**

**Violation of California Business and Professions Code § 16720 *et seq.***

**(The Cartwright Act)**

4    71.    Plaintiff incorporates and re-alleges as though fully set forth herein, each and

5  every allegation set forth in the preceding paragraphs of this Complaint.

6    72.    Beginning at a date unknown to Plaintiff but at least as early as February 2002

7  through the present, Defendants engaged in a continuing agreement, understanding, and

8  conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Chocolate

9  in the United States, including California, in violation of Section 16720 of the Business and

10  Professions Code.

11    73.    The contract, combination, and conspiracy alleged herein consisted of a

12  continuing agreement, understanding, and concert of action among the Defendants, the

13  substantial terms of which were to raise, fix, stabilize, and maintain at artificially high and non-

14  competitive levels the prices at which they sold Chocolate throughout California and the United

15  States.

16    74.    For the purpose of forming and effectuating the contract, combination, and

17  conspiracy, the Defendants did those things which they contracted, combined, and conspired to

18  do, including but not limited to the acts, practices, and course of conduct set forth above.

19    75.    This unlawful contract, combination, and conspiracy had the following effects,

20  among others:

21        a.    Chocolate prices were raised, fixed, and maintained at artificially high and

22  non-competitive levels;

23        b.    Plaintiff and the other members of the Class were deprived of the benefits

24  of free and open competition in the purchase of Chocolate; and

25        c.    Price competition in the sale of Chocolate was restrained, suppressed, and

26  eliminated.

27    76.    During the Class Period, Plaintiff and other members of the Class indirectly

28  purchased substantial quantities of Chocolate.  By reason of the violations alleged herein,

1 │ Plaintiff and other members of the Class paid more for their purchases of Chocolate than they

2 │ would have in the absence of the illegal contract, combination, and conspiracy.  As a result,

3 │ Plaintiff and other members of the Class have been injured and have suffered damages in an

4 │ amount presently undetermined.

5 │ **Third Claim For Relief**

6 │ **Violation Of California Business and Professions Code§17200 et seq.**

7 │ **(The Unfair Competition Act)**

8 │ 77.     Plaintiff incorporates and re-alleges, as though fully set forth herein, each and

9 │ every allegation set forth in the preceding paragraphs of this Complaint.

10 │ 78.     Section 17200 of the California Business and Professions Code prohibits unfair

11 │ competition by prohibiting any "unlawful, unfair or fraudulent business acts or practice...."

12 │ 79.     This Complaint is filed and these proceedings are instituted pursuant to sections

13 │ 17203 and 17204 of the California Business and Professions Code, to obtain relief from the

14 │ Defendants for business acts and practices, as alleged herein, that violate the Unfair Competition

15 │ Law. Except as specifically provided herein to the contrary, the alleged violations of the Unfair

16 │ Competition Law charged herein are distinct and independent of the alleged violations of the

17 │ Cartwright Act.

18 │ 80.     The business acts and practices of Defendants, as alleged herein, constituted and

19 │ constitute a common, continuous, and continuing plan and scheme to deceive the public by

20 │ means of unfair, unlawful and/or fraudulent practices affecting the trade and commerce in

21 │ Chocolate, within the meaning of Section 17200 et seq. of the Business and Professions Code,

22 │ including, but in no way limited to, the following:

23 │          a.     The violations of California Business and Professions Code section 16720

24 │ et seq. set forth above are unlawful;

25 │          b.     Defendants' business acts and practices, as described above, whether or

26 │ not in violation of Business and Professions Code section 16720 et seq., and whether or not the

27 │ product of concerted action, are otherwise unfair, unconscionable, unlawful and fraudulent;

28 │

c.      Defendants' business acts and practices are unfair to consumers in the State of California within the meaning of section 17200 *et seq.* of the California Business and Professions Code; and

d.      Defendants' business acts and practices are fraudulent within the meaning of Business and Professions Code section 17200 *et seq.*

81.     Defendants' course of conduct, acts, and practices in violation of Business and Professions Code Section 16720 also constitute a violation of Sections 17202 and 17203 of that code.

82.     By reason of the violations of California Business and Professions Code, Section 17200 *et seq.*, Plaintiff and other members of the Class have been injured in that they paid more for Chocolate than they would have in the absence of Defendants' unfair or deceptive practices.

83.     The unlawful and unfair business practices of Defendants, and each of them, as described above, have injured and present a continuing threat of injury to members of the public in that Defendants' conduct has restrained and continues to restrain competition, has caused and continues to cause Plaintiff and the members of the Class he represents to pay supra-competitive and artificially-inflated prices for Chocolate and has made it likely that members of the public have been and will continue to be deceived with respect to the manner in which the price charged for Chocolate has been set.

84.     The illegal conduct alleged herein is continuing, with no indication that it will cease, and unless restrained, Defendants will continue to engage in such conduct.

85.     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as alleged herein above, constituted and constitute unfair, unlawful and/or fraudulent business practices within the meaning of Business and Professions Code, Section 17200 *et seq.*  Plaintiff are accordingly entitled to equitable relief directing Defendants to cease and desist from engaging in the practices described herein, and full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business acts or practices.

//

1

## FRAUDULENT CONCEALMENT

2        86.    Throughout the relevant period, Defendants affirmatively and fraudulently

3    concealed their unlawful conduct against Plaintiff and the Class.

4        87.    Plaintiff and the members of the Class did not discover, and could not discover

5    through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as

6    alleged herein until shortly before this litigation was commenced. Nor could Plaintiff and the

7    members of the Class have discovered the violations earlier than that time because Defendants

8    conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in

9    furtherance thereof, and fraudulently concealed their activities through various other means and

10   methods designed to avoid detection. The conspiracy was by its nature self-concealing.

11       88.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect

12   to Chocolate, which they affirmatively concealed, in at least the following respects:

13            a.    By agreeing among themselves not to discuss publicly, or otherwise

14   reveal, the nature and substance of the acts and communications in furtherance of their illegal

15   scheme; and

16            b.    By giving false and pretextual reasons for their Chocolate price increases

17   during the relevant period and by describing such increases falsely as being the result of external

18   costs, namely the rising cost of dairy, oil and cocoa, rather than collusion.

19       89.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff

20   and the Class assert the tolling of any applicable statute of limitations affecting the rights of

21   action of Plaintiff and the members of the Class.

22       90.

23

## PRAYER FOR RELIEF

24       WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for

25   judgment against the Defendants jointly and severally, as follows:

26       A.    That the Court determine that this action may be maintained as a class action

27   under Rule 23 of the Federal Rules of Civil Procedure;

28

**19**
**CLASS ACTION COMPLAINT**

B.     That the Court adjudge and decree that the unlawful conduct, contract, combination and conspiracy alleged herein constitutes:

        a.  A *per se* unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1, and Sections 4 and 26 of the Clayton Act, as alleged in the First Claim For Relief;

        b.  A violation of the California Business and Professions Code, Section 16700 *et seq.*, as alleged in the Second Claim For Relief;

        c.  A violation of the California Business and Professions Code, Section 17200 *et seq.*, as alleged in the Third Claim For Relief;

C.     That Plaintiff and the members of the Class have been injured and damaged as a result of the unlawful conduct, contract, combination and conspiracy;

D.     That Plaintiff and each and every member of the Class recover threefold the damages determined to have been sustained by them during the period February 2002 through the present, or such later date as it may be determined that the unlawful activity has ceased;

E.     That Plaintiff and members of the Class recover their cost of suit, including reasonable attorney's fees pursuant to Section 16750(a) of the Business and Professions Code;

F.     For pre-judgment interest at the highest legal rate, from and after the date of service of the initial complaint in this action, and post-judgment interest;

G.     That Defendants, their co-conspirators, successors, transferees, assigns, parents, subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on behalf of Defendants, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting or following any practice, plan, program or design having a similar purpose or effect in restraining competition;

H.     That Defendants, and each of them, their agents, servants, and employees, and all persons acting, directly or indirectly, in concert with them, be ordered to restore all funds to each member of the Class acquired by means of any act or practice declared by this Court to be

1    unlawful or to constitute unfair competition under Section 17200 *et seq*. of the Business and

2    Professions Code, including disgorgement of their wrongfully obtained revenues, earnings

3    profits, compensation, and benefits, pursuant to the Business and Professions Code, Sections

4    17203 and 17204;

5        I.    That Plaintiff and the members of the Class recover their costs of suit, including

6    reasonable attorneys' fees as provided by law; and

7        J.    That the Court award Plaintiff and the Class he represents such other and further

8    relief as may be necessary and appropriate.

9    **JURY DEMAND**

10        Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

11

12    Dated: January 24, 2007        By:             

13                          Mario N. Alioto (56433)

14                          Lauren C. Russell (241151)
                      TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP

15                          2280 Union Street
                      San Francisco, CA 94123

16                          Telephone:  (415) 563-7200
                      Facsimile: (415) 346-0679

17                          malioto@tatp.com ; laurenrussell@tatp.com

18                          Joseph M. Patane (72202)

19                          LAW OFFICES OF JOSEPH M. PATANE
                      2280 Union Street

20                          San Francisco, CA 94123
                      Telephone: (415) 563-7200

21                          Facsimile: (415) 346-0679
                      E-mail: jpatane@tatp.com

22

23                          Attorneys for Plaintiff Candido
                      And All Others Similarly Situated

24

25

26

27

28

**21**
**CLASS ACTION COMPLAINT**